FILED

2009 Dec-11  AM 10:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MYERS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-08-S-1865-NW |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Lisa Myers, commenced this action alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, as well as multiple state law claims against four defendants: Arrow Financial Services, LLC ("Arrow"); Trans Union, LLC ("Trans Union"); Equifax Information Services, Inc. ("Equifax"); and Experian Information Solutions, Inc. ("Experian").[1]  On December 1, 2008, however, this court entered final judgment against Arrow in the amount of $5,000.[2]  The court subsequently dismissed all of plaintiff's claims against Trans Union and Equifax pursuant to joint stipulations of dismissal filed by the parties.[3]  Thus, the only claims remaining are

---

[1] *See* doc. no. 7.

[2] *See* doc. no. 24 (Partial final judgment and order of dismissal for defendant Arrow).

[3] *See* doc. no. 27 (Joint stipulation of dismissal for claims against defendant Equifax);  Order entered March 26, 2009 dismissing defendant Equifax;  doc no. 35 (Order of dismissal for defendant

against Experian for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., and state law claims for negligence, malice, wantonness, recklessness, and/or intentional conduct, as well as defamation, slander, libel, and invasion of privacy. The case presently is before the court on cross motions.  Defendant Experian seeks summary judgment on all of plaintiff's claims.[4]  Plaintiff seeks summary judgment only on its claim under section 1681i(a)of the Fair Credit Reporting Act.[5]  Upon consideration, and for the following reasons, defendant's motion will be granted in part and denied in part, and plaintiff's motion will be denied.

## I. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[6]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

---

Trans Union).

[4] *See* doc. no. 38.

[5] *See* doc. no. 40.

[6] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied). *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

When presented with cross motions for summary judgment, "[t]he court must

rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2720, at 335-36 (1998) (footnote omitted); *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986).  Further, the court is required to "relate all material facts in genuine dispute in the light most favorable to the party resisting summary judgment." *Serrano-Cruz v. DFI Puerto Rico*, *Inc.*, 109 F.3d 23, 24 (1st Cir. 1997) (citing *Sanchez v. Alvarado*, 101 F.3d 223, 225 n.1 (1st Cir. 1996)).

## II.  SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A.    Plaintiff's Credit Dispute with Arrow Financial Services

On May 13, 2008, Arrow Financial Services, LLC sued plaintiff, Lisa Myers, in the Small Claims Court of Lauderdale County, Alabama for a debt on a Providian Financial Corporation ("Providian") credit card, which Arrow allegedly had purchased as a collection account.[7]   Arrow sued Ms. Myers for approximately $2,752.[8]  In her answer, Ms. Myers denied that she owed that debt by checking the box that stated "I deny that I am responsible at all."[9]  In her deposition for this case,

---

[7] *See* doc. no. 39, Ex. D (Deposition of Lisa M. Myers), at 23-25.  Arrow allegedly purchased the account from Washington Mutual, which had previously merged with Providian. *See id.*

[8] *See id.*

[9] *See* doc. no. 43, Ex. C (Defendant's Answer filed in the Small Claims Court of Lauderdale County).

plaintiff admitted that she had used a Providian credit card, and that she never paid the debt on that card, but denied that Arrow was the owner of the debt on the Providian account.[10]

Prior to her appearance in Small Claims Court, Ms. Myers requested a copy of her "consumer disclosure" from Experian.[11]  Experian is a consumer reporting agency that gathers credit information and makes it available to its customers engaged in credit-related transactions.[12]  The Arrow account appeared on plaintiff's July 2008 Experian consumer disclosure and showed that it was a collection account in the amount of $3,399.[13]  It also reflected a "credit limit or original amount" of $2,374, the base amount for which Arrow had sued plaintiff in state court before it added interest, fees, and costs.[14]

Counsel for Arrow and counsel for Ms. Myers appeared in the Lauderdale County Small Claims Court on August 6, 2008.[15]  Arrow did not present any witnesses or evidence in its case against Ms. Myers; consequently, the court entered

---

[10] *See* Deposition of Lisa M. Myers, at 24-25.

[11] *See* doc. no. 39, Ex. B (Declaration of Kimberly Hughes), ¶ 12.  A "consumer disclosure" differs from a "consumer report" in that a consumer disclosure is issued to the consumer that is the subject of the credit file, whereas a consumer report is issued to a third party seeking credit information regarding the consumer.

[12] *See id.*, ¶ 3.

[13] *See* doc. no. 39, Ex. E (Experian Consumer Credit Disclosure for Lisa M. Myers, dated July 21, 2008), at 2.

[14] *See id.*

[15] *See* doc. no. 43, Ex. D (Order dated August 13, 2008).

judgment in plaintiff's favor.[16]  The court's order provided that:

> The parties appeared before this Court on Wednesday, August 6,
> 2008.  The Defendant, Lisa M. Myers was present in Court with counsel
> of Birmingham, Alabama.  Plaintiff's counsel was present in Court,
> however no witnesses or evidence was [sic] presented, therefore, this
> Court finds in favor of Defendant, Lisa M. Myers.[17]

Plaintiff did not request another copy of her Experian consumer disclosure after

the small claims court found in her favor.[18]  Instead, on August 26, 2008, she sent a

dispute letter prepared by her attorney to three credit bureaus — Equifax, Trans

Union, and Experian — disputing the Arrow account on her consumer disclosure.[19]

Experian received plaintiff's letter on September 4, 2008.[20]  In the letter, plaintiff

stated:

> I don't owe any money to Arrow Financial Services (AFS) for account
> # 32779389, in the amount of $2,752.01.  This account is wrong.  Delete
> it immediately.  AFS sued me for this debt in the district court of
> Lauderdale County, Alabama, case # SM-2008-000582.00, in my answer
> to the lawsuit I denied I owed any money on the account, judgment was
> entered for defendant, you can call the court for more information at
> 256-760-5728 or the attorneys for AFS at 205-323-5400.[21]

Plaintiff, however, did not include a copy of the court order dismissing the lawsuit

---

[16] *See id.*

[17] *Id.*

[18] *See* Declaration of Kimberly Hughes, ¶ 12.

[19] *See* Deposition of Lisa M. Myers, at 37.

[20] *See* Declaration of Kimberly Hughes, ¶ 12.

[21] *See* doc. no. 39, Ex. F (Letter to Experian).

that Arrow had filed against her.[22]  In fact, plaintiff did not attach any supporting documentation to her letter.[23]

## B.     Experian's Procedures for Investigating Credit Information Disputes

Experian has developed detailed procedures for providing customers with access to their credit files and means to request investigations if they disagree with items appearing in their credit reports.[24]  Consumers who disagree with the accuracy or completeness of any items of credit information that are reported in their file disclosure, or in a consumer report provided to a credit grantor, may submit disputes of those items directly to Experian.[25]

When a consumer does not provide proof with his or her dispute, sufficient to allow Experian to update the consumer's file internally, Experian performs an external investigation.[26]  Because Experian does not have access to the creditor's files on the consumer, Experian generally investigates by contacting the creditor, explaining the consumer's dispute, providing the creditor with the relevant information supplied by the consumer, and asking for a response concerning the accuracy of the disputed

---

[22] *See id.*;  Deposition of Lisa M. Myers, at 40.

[23] *See* doc. no. 39, Ex. F (Letter to Experian).

[24] *See* Declaration of Kimberly Hughes, ¶ 5.

[25] *See id.*, ¶ 6.

[26] *See id.*, ¶ 7.

7

items.[27]  Typically, Experian contacts the creditor by sending a dispute form, referred

to as an "Automated Consumer Dispute Verification," or ACDV, which identifies the

consumer, the basis for the dispute, how the creditor is currently reporting the disputed

information to Experian, and how the consumer asserts the disputed information

should be reported.[28]  In the ACDV, Experian asks the creditor to verify or amend the

information reported.[29]   The creditor returns the ACDV to Experian, instructing

Experian either to leave the item as it is, delete it, or change it.[30]  Experian then sends

the consumer a summary reflecting the investigation results and the status of the

disputed item.[31]

## C.    Experian's Investigation of Plaintiff's Credit Dispute

In this case, Experian received plaintiff's dispute letter in its processing office

in Allen, Texas on September 4, 2008.[32]   Experian scanned the dispute letter and

electronically sent it to an Experian processing agent in *Santiago, Chile*.[33]  Experian's

dispute agents who reside in Chile generally do not make telephone calls, but they are

---

[27] *See id.*

[28] *See id.*

[29] *See* Declaration of Kimberly Hughes, ¶ 7.

[30] *See id.*, ¶ 8.

[31] *See id.*, ¶¶ 8, 10.

[32] *See* doc. no. 43, Ex. H (Deposition of Kimberly Hughes), at 88-89.

[33] *See id.* at 89-90.  The agent is no longer employed by Experian and her whereabouts are unknown. *See id.* at 48-49.

authorized to refer any disputes that require a telephone call to a dispute agent in Experian's Allen, Texas facility.[34]  Plaintiff's dispute, however, was never referred to a Texas Experian agent.

On September 9, 2008, Experian sent Arrow an ACDV notifying the creditor that plaintiff disputed the status of the account.  The ACDV explained that plaintiff claimed that the account was not hers, and that she alleged:  "I don't owe any money. AFS sued me for this debt (Court contact 256-760-5728) I denied the debt.  AFS PH 205-323-5400."[35]  Arrow returned the ACDV on October 1, 2008, reporting that the status/rating was a "93," which means that the account is a collection account.[36]

The Experian agent handling plaintiff's dispute did not contact anyone aside from Arrow as part of her investigation.[37]  Generally, Experian will not request documentation from a third party as part of its investigation of a collections account dispute, and, in accordance with that policy, the processing agent in this case did not seek documentation from any third party.[38]  Kimberly Hughes, a corporate representative for Experian, testified that, if plaintiff had provided a copy of the court

---

[34] *See* Deposition of Kimberly Hughes, at 192.

[35] *See* Declaration of Kimberly Hughes, ¶ 13; doc. no. 39, Ex. G (ACDV to Arrow dated Sept. 9, 2008).

[36] *See* Declaration of Kimberly Hughes, ¶ 13.

[37] *See* Deposition of Kimberly Hughes, at 142-43.

[38] *See id.* at 112.

9

order dismissing Arrow's claim, Experian would have taken additional steps to investigate the Arrow account.[39]   Since plaintiff only referenced the state court judgment and did not provide a copy of it, however, Experian's regular procedures dictated that the agent need not contact any third party to obtain a copy of the order.[40]

According to the testimony of Missy Hibbett, the Circuit Court Clerk for Lauderdale County, Alabama, all of the small claims court files are scanned so that access to any part of the public file is available electronically and can be emailed to anybody who requests it.[41]   Despite the relative ease of obtaining the court records, Ms. Hughes explained that Experian relies on the consumer to provide documents related to an account dispute and will not request copies as a part of its investigation.[42] In order for Experian to have deleted the "tradeline" based solely on the information provided by plaintiff, she would have needed to provide proof that the court found in her favor when adjudicating Arrow's claim.[43]

Upon receipt of the ACDV from Arrow, Experian updated the account to add the note "Account Information Disputed by Consumer."[44]   Experian then sent plaintiff

---

[39] *See id.* at 101-106.

[40] *See id.*

[41] *See* doc. no. 43, Ex. O (Deposition of Missy Hibbett), at 10-11..

[42] *See* Deposition of Kimberly Hughes, at 112.

[43] *See id.* at 114.  The information that a credit bureau reports regarding a consumer's history on a credit account is referred to as a "tradeline."

[44] *See* Declaration of Kimberly Hughes, ¶ 13.

a correction summary with the results of the investigation on October 2, 2008, notifying plaintiff that it would continue to report the Arrow account until 2011.[45]

Plaintiff filed this lawsuit on October 8, 2008.[46]  In her original complaint, plaintiff named only three defendants: Arrow; Trans Union; and Equifax.[47]  Plaintiff filed a motion seeking leave to add Experian as a defendant on October 11, 2008.[48] The court granted that motion three days later, on October 14, 2008, and plaintiff filed her amended complaint the following day.[49]  On October 23, 2008, at Arrow's instruction, Experian suppressed the Arrow account from appearing on any consumer reports or disclosures issued by Experian.[50]

Plaintiff described Experian's refusal to remove the Arrow account upon receipt of her dispute letter as a "nightmare" that caused her heart palpitations, nausea, trouble sleeping, and feelings of embarrassment and frustration.[51]

## III.  DISCUSSION

### A.    Plaintiff's First Fair Credit Reporting Act Claim:  15 U.S.C. § 1681e(b)

---

[45] *See* Declaration of Kimberly Hughes, ¶ 13;  doc. no. 39, Ex. H (Corrected Summary dated October 2, 2009).

[46] *See* doc. no. 1.

[47] *See id.*

[48] *See* doc. no. 6.

[49] *See* Order dated October 14, 2008;  doc. no. 7.

[50] *See* Declaration of Kimberly Hughes, ¶ 15.

[51] *See* Deposition of Lisa M. Myers, at 79-88.

The Fair Credit Reporting Act ("FCRA") requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

In plaintiff's amended complaint, she alleges that Experian violated that code section by failing to maintain, and failing to follow, reasonable procedures to assure the maximum possible accuracy of information included in her credit report.

To make out a prima facie violation of 15 U.S.C. § 1681e(b), plaintiff must present evidence that (1) inaccurate information was included in her credit report, (2) the inaccuracy was due to Experian's failure to follow reasonable procedures to assure the maximum possible accuracy of her credit file, and (3) she suffered injury that was caused by the inclusion of the inaccurate entry. *See Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1154-56 (11th Cir. 1991). If plaintiff is unable to present proof supporting any of these elements, she cannot make out a claim under 15 U.S.C. § 1681e(b).

Plaintiff concedes that her "maximum possibly accuracy" claim under 15 U.S.C. § 1681(e)(b) fails because she cannot present evidence that the allegedly false information regarding her Arrow account was presented to a third party in a consumer report, and that she thereby suffered an injury that was caused by the inclusion of the

allegedly inaccurate information.  Accordingly, plaintiff's claim under 15 U.S.C. §

1681(e)(b) will be dismissed.

## B.      Plaintiff's Second Fair Credit Reporting Act Claim:  15 U.S.C. § 1681i(a)

In her amended complaint, plaintiff also alleges that Experian "failed to conduct

a proper and lawful reinvestigation," in violation of 15 U.S.C. § 1681i(a).  The FCRA

requires consumer reporting agencies to conduct a reasonable reinvestigation into any

item that is disputed by a consumer.[52]   Specifically, the Act provides that

> if the completeness or accuracy of any item of information contained in
> a consumer's file at a consumer reporting agency is disputed by the
> consumer and the consumer notifies the agency directly, or indirectly
> through a reseller, of such dispute, the agency shall, free of charge,
> conduct *a reasonable reinvestigation to determine whether the disputed*
> *information is inaccurate* and record the current status of the disputed
> information, or delete the item from the file in accordance with paragraph
> (5), before the end of the 30-day period beginning on the date on which
> the agency receives the notice of the dispute from the consumer or
> reseller.

15 U.S.C. § 1681i(a)(1)(A) (emphasis supplied).

The Eleventh Circuit has held that a section 1681i(a) claim "is properly raised

when a particular credit report contains a factual deficiency or error that could have

been remedied by uncovering additional facts that provide a more accurate

representation about a particular entry."  *Cahlin*, 936 F.2d at 1160.  Unlike a claim

---

[52] "Reinvestigation" is a statutory term of art.  A dispute filed by a consumer prompts an
initial investigation by the consumer reporting agency that is called a "reinvestigation."

founded upon § 1681e(b) and discussed in the preceding section of this opinion, there

is no statutory basis for requiring the actual issuance of a consumer credit report to a

third party under § 1681i(a).  *See Thomas v. Gulf Coast Credit Services, Inc.*, 214 F.

Supp. 2d 1228, 1236 (M.D. Ala. 2002).  In fact, § 1681i(a) explicitly extends coverage

to inaccuracies extant within "a consumer's file at a consumer reporting agency." 15

U.S.C. § 1681i(a)(1)(A).

### 1.    Accuracy of reporting

To survive a motion for summary judgment, plaintiff must establish that her

consumer file at Experian contained an inaccuracy.   Courts have adopted two

approaches to determining what constitutes an "accurate" credit report.  *See Ray v.

Equifax Information Services, LLC*, 327 Fed. Appx. 819, 826 n.3 (11th Cir. 2009).

The "technically accurate" approach holds that a credit reporting agency has satisfied

its duty if it produces a consumer report containing "factually correct information

about a consumer that might nonetheless be misleading or incomplete in some

respect." *Cahlin*, 936 F.2d at 1157 (citing *Todd v. Associated Credit Bureau, Inc.*, 451

F. Supp. 447 (E.D. Pa. 1977), *aff'd mem.*, 578 F.2d 1376 (3d Cir. 1978)).  In contrast,

the "maximum possible accuracy" approach holds that a credit reporting agency has

*not* satisfied its duty if it reports factually correct information that could also be

interpreted as being misleading or incomplete.  *See Cahlin,* 936 F.2d at 1157 (citing

*Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 42-45 (D.C. Cir. 1984)). The Eleventh Circuit has not formally adopted either approach. *See Ray*, 327 Fed. Appx. at 826 n.3. However, another judge in the Northern District of Alabama has recently applied the less rigorous "technically accurate" approach. *See Nelson v. American Express Travel Related Services, Inc.*, No. 2:08-cv-438-JHH (N.D. Ala. June 17, 2009).

In *Nelson*, Senior Judge James Hughes Hancock found that the "technically accurate" approach most logically governed the burden faced by Experian in producing credit reports. *See id.*, slip op. at 22-23. Judge Hancock reasoned that:

> Requiring that each report be void of material omission would place too great a burden on credit reporting agencies and could subject them to liability for omitting information of which they did not know and had no reason to know. . . . Requiring "technical accuracy" in credit reports best captures the balance Congress struck between consumers' concern for fair and equitable treatment and reporting agencies' goal of maintaining accurate and cost-effective credit reporting.

*Id.*, slip op. at 23.

Here, regardless of the approach adopted by this court, plaintiff has established that her Experian credit report contained an inaccuracy because Experian reported factually incorrect information. Although plaintiff admits that she had an account with Providian, and that she never paid the debt on that account, plaintiff disputes that Arrow now owns the debt. Experian claims that Arrow purchased the collection

account from Washington Mutual after its merger with Providian, but provides absolutely no evidence to support that allegation.

In support of plaintiff's argument that the reporting of the Arrow account was inaccurate, she provides evidence that Arrow sued her in state court alleging that she owed the debt, and that the court entered judgment in her favor. Arrow did not appeal the decision of the Small Claims Court to the Circuit Court of Lauderdale County, although it had the right to do so. *See* Ala. Code § 12-12-70 (1975). Plaintiff thus argues, and this court finds, that the state court's order conclusively established that she did not owe Arrow the debt that it alleged. Kimberly Hughes, a corporate representative for Experian, testified that if an Experian agent had received a copy of that court order, the agent would have deleted the tradeline from plaintiff's credit file.[53] This acknowledgment suggests that, upon reading the state court's order, Experian agreed that plaintiff did not in fact owe Arrow on the collection account as Experian had reported in plaintiff's file.

Consistent with plaintiff's argument that the reporting of the Arrow account was inaccurate, this court has already entered a judgment against Arrow in this case for $5,000. Accordingly, the court finds that the reporting of the Arrow account in plaintiff's Experian credit file was factually incorrect and, therefore, inaccurate within

---

[53] *See* Deposition of Kimberly Hughes, at 113.

the meaning of 15 U.S.C. § 1681i(a)(1)(A). This fact alone, however does not establish that plaintiff is entitled to summary judgment.

### 2.    Reasonable reinvestigation

The FCRA "does not make reporting agencies strictly liable for all inaccuracies." *Cahlin*, 936 F.2d at 1156. Rather, the Act recognizes that no credit reporting agency can be entirely flawless and, thus, consumer reporting agencies are only required to follow reasonable procedures. Accordingly, even if inaccurate information is reported, there is no cause of action unless the reporting agency failed to follow reasonable procedures.

Determination of the reasonableness of the defendant's investigation is generally treated as a fact question, even when the underlying facts are undisputed, as they are in this case. Even so, the claim can be resolved on summary judgment when the reasonableness or unreasonableness of the procedures is beyond question. *See Crabill v. Trans Union*, 259 F.3d 663 (7th Cir. 1994).

The Federal Trade Commission ("FTC"), which is the agency empowered to enforce the FCRA, provides guidance on the question of what constitutes reasonable procedures. The FTC states that

> [a] consumer reporting agency conducting a reinvestigation must make
> a good faith effort to determine the accuracy of the disputed item or
> items. At a minimum, it must check with the original sources or other

reliable sources of the disputed information and inform them of the nature of the consumer's dispute.  In reinvestigating and attempting to verify a disputed credit transaction, a consumer reporting agency may rely on the accuracy of a creditor's ledger sheets and need not require the creditor ro produce documentation such as the actual signed sales slips.

FTC Commentary on the Fair Credit Reporting Act, 16 C.F.R. § 600 (1990).

The undisputed evidence in this case shows that when plaintiff first contacted Experian about the Arrow account, it conducted a reinvestigation by contacting Arrow, the source of the information, informing Arrow of the nature of the dispute, and asking it to determine whether the information in Experian's records was accurate. Experian conveyed to Arrow all of the information that plaintiff had provided to Experian with her dispute.  Arrow confirmed that the account was being reported accurately, and Experian relied on that representation without contacting any outside sources.  These procedures meet the minimal requirements set out in the Federal Trade Commission's Commentary.

Plaintiff argues, however, that Experian's procedures for governing an investigation are unreasonable, because the dispute agent at Experian should have contacted the state court, a third party to the dispute, to ask whether Ms. Meyers had won the collection case that Arrow had filed against her.  Plaintiff further claims that in the context of a dispute like the one that she raised, Experian's investigating agents are not permitted to contact the court or to take any independent action to obtain

18

documents referenced by the consumer.  Plaintiff's argument, however, misrepresents the record.  In fact, the evidence shows that, while agents at Experian's Santiago, Chile generally do not make telephone calls to verify information (probably because their command of the spoken English language is less than perfect), any dispute that warrants a telephone inquiry is referred to an agent at the Allen, Texas location, who will then make any necessary calls.  In her deposition, Kimberly Hughes, the corporate representative for Experian, testified that Experian's policies do not prevent dispute agents from making telephone calls:

> Q:    Is there anything in Experian's policies and procedures that would have prevented the dispute agent in this case from contacting Ms. Meyers or calling any of the numbers that she gave in the dispute letter?
>
> A:    No.  There's noting specifically that would prevent them from doing that.
>
> . . .
>
> Q:    Okay.  There's nothing that would have prevented Ms. Varas, the - the dispute agent in this case, from calling the court, for instance?
>
> A:    No, but again, that really wouldn't be — in this case it's not an item from the court that is being disputed.  It's a trade line from another entity.  So a phone call to the court wouldn't necessarily resolve the situation that Ms. Myers is trying to address with Experian.[54]

Experian argues that its dispute agent did not make a telephone call regarding plaintiff's dispute because Experian had reasonable procedures in place to handle the

---

[54] *See* Deposition of Kimberly Hughes, at 99-101.

dispute by contacting the source of the information, the creditor.

Plaintiff cites *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008), for the proposition that Experian's failure to contact the court to investigate her dispute was unreasonable.  But the facts in *Dennis* differ significantly from the facts in this case. In *Dennis*, the consumer was sued for "unlawful detainer" by his landlord.  *See id.* at 1068.  The parties settled the case when the consumer agreed to pay the landlord, and as a result, no judgment was entered against the consumer.  *See id.*  The state court's Register of Civil Actions, however, incorrectly indicated that a judgment had been entered against the consumer.  *See id.*  Several months later, after the settlement was completed, the court register correctly showed that no judgment was entered and that the case had been dismissed with prejudice.  *See id.*  Despite the corrected entry, the consumer found that Experian still listed a judgment on the consumer's credit report. *See id.*   When the consumer disputed the information regarding the judgment, Experian hired a company to investigate the matter to determine whether the court record in fact reflected a judgment against the consumer.  *See id.*  The company determined that the judgment was accurate and sent the relevant paperwork to Experian.  *See id.*  Although the paperwork correctly reflected the absence of a judgment against the consumer, Experian misinterpreted the paperwork and kept the false information on the consumer's credit report.  *See id.*

20

The *Dennis* Court held that summary judgment for the consumer on his section 1681i claim was appropriate. *Dennis*, 520 F.3d at 1071. It held that no rational jury could find that the company was not negligent, and that "a reinvestigation that overlooks documents in the court file expressly stating that no adverse judgment was entered falls short of this [reasonable diligence] standard." *Id.* at 1070-71. Plaintiff extensively cites the *Dennis* opinion to support her argument that Experian should have contacted the clerk of the Lauderdale County Small Claims Court as part of its investigation in this case. Plaintiff neglects to consider, however, that while in *Dennis*, the source of the disputed information was the court, in this case, the source of the disputed information was the creditor, Arrow. In *Dennis*, the consumer disputed *the court's* reporting of a judgment against plaintiff, while in this case, plaintiff disputed *a creditor's* reporting of a collection account. The key distinction between the two cases is that, in *Dennis*, the court was the direct source of the disputed information, whereas here, the court is a third party to the dispute. Therefore, the *Dennis* opinion does not, as plaintiff suggests, have any persuasive value in determining the reasonableness of Experian's investigation in this case.

In support of Experian's argument that it conducted a reasonable investigation, Experian cites *Davis v. Equifax Information Services, LLC*, 346 F. Supp. 2d 1164 (N.D. Ala. 2004). In *Davis*, the court held that Experian had conducted a reasonable

investigation within the meaning of section 1681i(a) when it followed the same procedures that Experian followed in this case. *Id.* at 1168, 1175-76. As plaintiff points out, however, *Davis* did not specifically address a situation where, as here, the consumer identifies a potential third-party source of information in her dispute letter. In *Davis*, the only information available to the credit reporting agency concerning the consumer's dispute was in the sole possession of the creditor. Although Experian's procedures in this case were consistent with those found to be reasonable by the court in *Davis*, the facts of this case could have required further investigative procedures.

Defendant argues that the FCRA does not require Experian to call a third party for information related to the reporting of an account, and that if it did, Experian might be required to call any third party that a consumer claimed to have relevant information. However, defendant cites no authority for that proposition. Without more, the court cannot find that the reasonableness of the procedures is beyond question. Nor can the court determine that the unreasonableness of Experian's procedures is beyond question. Therefore, the court finds that a genuine issue of material fact remains with respect to whether Experian conducted a reasonable reinvestigation of plaintiff's dispute within the meaning of 15 U.S.C. § 1681i(a)(1)(A). Accordingly, neither plaintiff nor defendant is entitled to summary judgment on plaintiff's claim under 15 U.S.C. § 1681i(a).

22

**C.      Plaintiff's Claim for Punitive Damages Under the FCRA**

A plaintiff seeking punitive damages under the FCRA must prove a willful violation.  15 U.S.C. § 1681n.  Under the FCRA, willfulness requires either a knowing or reckless violation of law.  *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 57-59 (2007).  Recklessness is "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Id.* at 68 (internal quotation marks omitted).  Therefore, plaintiff must prove that Experian either acted with the knowledge that its conduct was unlawful, or acted in spite of an unjustifiably high risk of violating the law.

Although there exists a genuine issue of material fact as to whether Experian violated the law by failing to contact the state court as part of its investigation of plaintiff's dispute, there is no evidence that Experian acted with knowledge that it was violating the law, or that it acted in spite of an unjustifiably high risk of violating the law.  Accordingly,  defendant's motion for summary judgment on plaintiff's claim for punitive damages will be granted.

**D.      Plaintiff's State Law Claims for Negligence, Malice, Wantonness, Recklessness, and/or Intentional Conduct**

Plaintiff alleges that Experian acted negligently in handling her dispute and, consequently was responsible for her claimed emotional distress.   To prove

negligence, plaintiff must establish the classic tort elements of "duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002). Even if plaintiff can make out a state law claim of negligence, the claim is specifically pre-empted by 15 U.S.C. § 1681h(e), which bars such an action unless plaintiff proves that the reporting agency provided false information furnished with malice or willful intent to injure her.[55] *See* 15 U.S.C. § 1681h(e). As explained above, plaintiff provides no evidence of willfulness, nor does she provide evidence that Experian acted maliciously or with a wilful intent to injure her. Therefore, defendant is entitled to summary judgment on plaintiff's state law claims for negligence, malice, wantonness, recklessness, and/or intentional conduct.

**E.    Plaintiff's Claims for Defamation, Libel, Slander, and Invasion of Privacy**

To establish a prima facie case of defamation, the plaintiff must show that the defendant published a false and defamatory statement to another concerning the

---

[55] The section of the FCRA cited in text provides:

Except as provided in sections 1681n and 1681o of this title, *no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency*, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681(h)(e) (emphasis supplied).

24

plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod). *See Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988). As with plaintiff's state law claim for negligence, her state law claims for defamation and invasion of privacy are pre-empted by 15 U.S.C. § 1681h(e), which bars such an action unless plaintiff proves that the reporting agency provided false information furnished with malice or willful intent to injure her.

Because plaintiff concedes that she cannot show the element of publication that is necessary to prove her claims for defamation, libel, slander, and invasion of privacy, those claims also will be dismissed.

## IV.  CONCLUSIONS

For the foregoing reasons, defendant's motion for summary judgment on plaintiff's claim under 15 U.S.C. § 1681e(b), her claim for punitive damages under 15 U.S.C. § 1681n, and her state law claims for negligence, malice, wantonness, recklessness, intentional conduct, defamation, libel, slander, and invasion of privacy will be granted. Pursuant to this court's finding that a genuine issue of material fact exists with regard to the reasonableness of defendant's reinvestigation of plaintiff's dispute, defendant's motion for summary judgment on plaintiff's claim under 15 U.S.C. § 1681i(a) will be denied. Similarly, plaintiff's motion for summary judgment

on her section 1681i(a) claim will be denied.  An appropriate order consistent with this

memorandum opinion will be entered contemporaneously herewith.

DONE and ORDERED this 10th day of December, 2009.

_____
United States District Judge